[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: POST JUDGMENT MOTIONS FOR CONTEMPT AND MODIFICATION
This proceeding involves post judgment motions filed by the parties.
The plaintiff filed a motion to modify child support on January 31, 2000. He claimed a material and substantial change in his financial circumstances, due to income reduction allegedly brought on by his medical condition.
The defendant filed a motion for contempt on February 29, 2000. She alleged that the plaintiff has willfully defied this court's orders by failing to pay child support, and also by failing to reimburse her for the minor child's medical expenses.
The court heard evidence and testimony at a contested hearing which was held on diverse dates through May 21, 2001. The court has carefully considered all of the evidence and testimony introduced at hearing.
 Factual Findings
The parties were married on July 12, 1982 and have two minor children: Christopher Wimpfheimer, whose date of birth is September 3, 1982, and Sean Wimpfheimer, whose date of birth is December 4, 1984. Christopher reached the age of majority on September 3, 2000.
The parties' marriage was dissolved by a judgment of this court, (Mihalakos, J.) on May 27, 1993, following an uncontested dissolution hearing.
The court takes judicial notice of the financial affidavits filed by the parties on the date of dissolution. Those documents revealed that the defendant was unemployed at the time of dissolution and had no income other than the support and maintenance payments which she was receiving from the plaintiff. At that time, the plaintiff was vice president of his family's textile business, A. Wimpfheimer Brother, a corporation which does business as American Velvet.
On the date of dissolution, the plaintiff's weekly gross income was $1,442.30, and his net weekly salary was $1,027.64. The parties signed a written agreement which was the basis of Judge Mihalakos' dissolution CT Page 7171 judgment. Pursuant to that judgment, the parties were awarded joint legal custody of the two minor children, whose primary residence was to be with the defendant mother. The plaintiff was ordered to pay the defendant, as total weekly support for the two minor children, the sum of $365.00 per week. The trial court found this payment to be in accordance with state child support guidelines. The plaintiff was also ordered to pay a pro rata share of the children's medical expenses.
In subsequent years, the plaintiff earned the following gross annual wages from his employment as an executive with the family-owned textile business: 1993: $144,166.63; 1994: $124,358.12; 1995: $93,333.36; 1996: $95,000.00; 1997: $105,500.04; 1998: $103,500.00 and 1999: $92,000.04.
The plaintiff testified at hearing that he has a longstanding substance abuse problem, for which he has received treatment in a residential facility. He has also suffered from a medical condition.
The plaintiff testified that he was paid his gross annual salary of $105,500.04 by the corporation in 1997, despite the fact that he did not work at his employment during most of that year.
The court finds that the plaintiff has had a significant substance abuse problem for a number of years. The plaintiff's substance abuse has contributed to his frequent absences from work, and his poor job performance.
The plaintiff did not offer any medical evidence, expert testimony, or treatment records at hearing concerning either his substance abuse, or medical condition. Based on all of the evidence introduced at this hearing, the court does not find that the plaintiff was physically or psychologically disabled during the time period which is the focus of this proceeding.
In January 2000, the plaintiff's income was reduced to $40,000.00 per year. From June 1, 2000 through July 31, 2000 the plaintiff was paid at the rate of $30,000.00 per annum. The plaintiff did not attend work during this latter period of time. CT Page 7172
The plaintiff was terminated from employment at A. Wimpfheimer Brother at the end of July 2000. He claims that he earned no income during the months of August and September 2000.
The plaintiff received unemployment compensation benefits of $344.25 per week from October 15, 2000 through December 31, 2000. The plaintiff's federal income tax return for 2000 indicated that he received wages of $20,884.00, tax refunds of $7,269.00, and unemployment compensation benefits of $5,265.00 during that year. His adjusted gross income for 2000 was $30,148.00.
The court's finding that the plaintiff was not medically or psychologically disabled is supported by several additional several facts. The defendant's 2000 tax return indicates that he expended $280.00 for job hunting expenses and resumes during that year (see Court Exhibit 2). It also reveals that he received $2,000.00 in gross receipts from his business as a musician during 2000. Per the plaintiff's testimony, and his 2000 tax return, he received a total of $5,265.00 in unemployment compensation benefits from October 15 — December 31, 2000. This court takes judicial notice of the legal requirement that a person receiving unemployment compensation benefits must be available for work.
Additionally, Charles Cardente, the treasurer and chief financial officer of A. Wimpfheimer Brother, testified at hearing.
He testified that the plaintiff's employment changed in January 2000 due to the fact the he was not performing well at work. Mr. Cardente stated that the plaintiff was terminated by the corporation due to performance issues related to non-attendance at work. The gist of Mr. Cardente's testimony was that the plaintiff was fired because he could not be depended upon t show up at work. According to Mr. Cardente, the plaintiff had a history of absences prior to his termination, and his firing was not the result of any medical condition. The court found Mr. Cardente's testimony to be credible. While the plaintiff's substance abuse and medical condition undoubtedly had impact on his job CT Page 7173 performance, the plaintiff's loss of employment did not result either from disability or medical or psychological conditions that prevented him from working.
Early in the year 2000, the plaintiff unilaterally reduced the amount of his child support payments. He paid $2,675.00 in child support during the first eight months of 2000. He has not made any child support payments from August 28, 2000, through the present time. Arrearage figures will be addressed below.
The plaintiff's father, who is the primary shareholder of the family textile business, died last fall.
Since his father's death, the plaintiff has been rehired as a director of A. Wimpfheimer Brother and receives an annual salary of $25,000.00 per year in that role. He is not required to perform many duties in order to earn that salary. The only requirements are that he attend director's meetings and be available by phone to address issues affecting the corporation.
The plaintiff owns 10 percent of the stock of A. Wimpfheimer Brother, a textile company which has offices in New York City, and plants in Virginia, Connecticut and Great Britain. The company is also affiliated with a textile manufacturing concern in Mexico. The value of the company is currently being appraised.
The plaintiff listed the value of his interest in the corporation as "unknown" on his financial affidavit.
After his father's death, the plaintiff received a large sum of money from a family trust. The plaintiff has recently liquidated some of the stock in that trust holding. There is approximately $14,000.00 remaining from the proceeds of that liquidated stock. That money is held in a bank account. There is also $309,000.00 in securities remaining in the trust account.
The trust account generates income and dividends of approximately $4,800.00 per year, which the plaintiff reinvests in the holdings of the trust. CT Page 7174
The plaintiff did not list his trust account on the financial affidavit which he submitted to this court on April 30, 2001.
That affidavit also failed to disclose the income which the plaintiff receives from the interest and dividends generated by the trust account. The plaintiff listed the total value of all his assets as $40,020.00 on his financial affidavit. In light of the fact that the plaintiff's trust account alone was worth $309,000.00, the court finds that the plaintiff made a serious misrepresentation to the court concerning his overall assets and financial condition. This causes the court to question the plaintiff's overall credibility in this proceeding.
The plaintiff is an accomplished bass player who has in the past recorded four or five CD's as a band member. He now earns approximately $80.00 per week as a performer with the Felix Swing Band. He occasionally receives small royalty checks from his recordings and he is a member of a professional musician's union. The plaintiff recently performed in Palm Springs. All of the trip expenses were paid on his behalf, and he also received a performance fee.
The plaintiff's April 30, 2001 financial affidavit indicates that he receives $449.47 in total net weekly income, and has total weekly expenses of $982.00. Those figures project a gross annual income of $23,372.44 and gross annual expenses of $51,064.00. This means the plaintiff experiences a yearly shortfall of $27,691.56 with respect to his expenses.
Despite the foregoing, the plaintiff's financial affidavit lists only three debts: $5,000.00 for his bass fiddle, $480.00 in Master Charge debt, and a dentist bill of $200.00, for a total of $5,680.00. Setting aside the debt for the musical instrument on which the plaintiff has apparently been making regular payments for several years, the plaintiff's only debts are two bills which total $680.00. As noted above, his adjusted gross income for 2000 was slightly more than $30,000.00, and he now claims to be earning only $25,000.00 per annum.
The court finds that this lack of debt, when examined CT Page 7175 in conjunction with the plaintiff's listed expenses, suggests a level of income higher than that which is being disclosed by the plaintiff.
 Discussion
The defendant urges the court to find the plaintiff in contempt, on the basis that he has willfully and contemptuously failed to pay child support, and his share of the minor child's unreimbursed medical expenses.
The plaintiff contends that the loss of his vice president's position, and resulting decrease in income, constitute a material and substantial change in his circumstances. This, he claims, obviates a finding of contempt and justifies a modification of his child support payments.
The mere financial inability of a party to pay court-ordered alimony or support does not justify a finding of contempt. The court must find willful disobedience of its orders. Turgeon v. Turgeon,190 Conn. 269, 283 (1983) (internal citations omitted).
Based on the evidence presented, the court finds that the plaintiff's substance abuse resulted in frequent absences and poor performance which prompted his employer to fire him. Although the plaintiff was not disabled, the court does not find that he voluntarily lost his job, or consented to the significant reduction of his income. The court finds that the plaintiff experienced a material and substantial change in his financial circumstances which justifies a modification of his child support payments, and precludes a finding by clear and convincing evidence that he is in contempt.
However, for reasons enumerated below, the court also finds that the plaintiff has had the capacity to earn $50,000.00 per year at all times since January, 2000.
The court also finds, based upon a preponderance of the evidence, that the plaintiff has present earning capacity of $50,000.00 per year. CT Page 7176
Although the plaintiff's adjusted gross income for 2000 was slightly more than $30,000.00, the court finds that he could have earned at least $20,000.00 more in income during that year. The court bases this finding on the following factors: (1) the plaintiff's significant capabilities as a professional musician; (2) his prior business experience which the court believes could have enabled him to obtain other forms of employment; (3) the plaintiff's lack of disability; and (4) the fact that the plaintiff went from the end of July through mid-October, 2000 without either working or receiving unemployment benefits. The plaintiff was paid by his employer during June and July even though he was not working. The plaintiff could have augmented this "severance pay" by working as a musician, or at a lesser paying job in the business field.
The plaintiff's last financial affidavit, which reflects annual expenses of more than $50,000, and only minimal current debt, supports this conclusion.
The plaintiff presently receives $25,000.00 per year as a director with the family business. He is required to do very little to earn that money and can obviously work at other full-time daily employment. The plaintiff is not physically or mentally disabled. The trust which he recently received earns interest and dividends of approximately $5,000.00 per annum The plaintiff claims he is earning in excess of $80.00 per week as a bass player.
Accordingly, the plaintiff currently has gross annual income of approximately $34,000.00 per year. The court finds that it is well within the plaintiff's grasp at present to eari an additional $16,000.00 in annual gross income, either through additional work as a musician, or some other type of employment. Here, too, the plaintiff's April 30, 2001 financial affidavit, which indicates expenses of more than $50,000.00 per annum, and very little debt, supports the court's finding that the plaintiff has such an earning capacity.
During the period between 1993 and 1999 the plaintiff earned a total of $757,858.19, or an average of $108,265.45 per annum. The court has found that the reduction to annual income of $50,000.00 constitutes a CT Page 7177 material and substantial change in his circumstances. Therefore, the court grants the plaintiff's motion for modification based on that material and substantial change, effective as of the date of the filing of the motion (January 31, 2000).
The court also orders that plaintiff's weekly child support payments from January 31, 2000 to the present date be computed based on the plaintiff's imputed income of $50,000.00 per annum. The court further orders that the plaintiff's present child support payments be based on a current earning capacity of $50,000.00 per annum.
Based on this $50,000.00 annual earning capacity, the court finds that the plaintiff's gross weekly income is $961.53. Making appropriate estimated allowances for Federal, State and New York City taxes, as well as Social Security and Medicare deductions, the court finds that the plaintiff has net weekly income of approximately $650.00. Adding this to the approximate $500.00 weekly net income of the defendant, the current combined net weekly income is $1,150.00. The basic combined child support obligation on that sum, per the State guidelines, is $327.00 per week for two children, and $221.00 per week for one child. The plaintiff's obligation is $186.00 per week for two children, and $126.00 per week for one child.
The court has used those figures in computing the arrearage for child support owed by the plaintiff to the defendant.
Based on its computations, the court finds that for the period from January 1, 2000 through May 28, 2001, an arrearage of $9,715.00 is owed to the defendant by the plaintiff for child support. (see attached Exhibit A). The foregoing figure takes into consideration the reduction in child support amount which would have occurred when the oldest child reached majority last September.
The court modifies its prior order with respect to child support and orders that the plaintiff pay to the defendant as weekly child support for the minor child the sum of $126.00 per week. The court bases this order on gross annual earning capacity of $50,000.00, and CT Page 7178 finds that it is in compliance with State child support guidelines. The court orders that an immediate wage execution be issued for this sum to plaintiff's employer.
The evidence at hearing established that the plaintiff has failed to reimburse the defendant for certain unreimbursed medical expenses of the minor children. The court finds that an arrearage for those expenses is owed by the plaintiff to the defendant in the amount of $1,710.00.
As noted above, the plaintiff has recently acquired trust fund assets in excess of $309,000.00. He also has approximately $14,000.00 on hand from an earlier liquidation of those assets. Based on the plaintiff's ownership of large liquid assets, the court orders that the plaintiff pay all arrearages owed to the defendant within 30 days of the date hereof, and further finds that deviation from arrearage guidelines is warranted.
The court does not find that the defendant has proven by clear and convincing evidence that the plaintiff is in contempt of court. The plaintiff's average annual income was involuntarily reduced by more than 50 percent. The plaintiff made some attempts at child support payments during the first half of 2000, and the plaintiff's motion for modification was filed in early 2000. For these reasons, the court does not find contempt.
However, the plaintiff has made no child support payments since August 28, 2000. The defendant has been required to support the children on her own since then. This litigation, for various reasons, has taken considerable time to conclude. Furthermore, with the recent receipt of his trust funds, the plaintiff now enjoys a financial position superior to that of the defendant. Based on the foregoing, the court finds that the plaintiff should make a financial contribution towards the payment of the defendant's counsel fees in this proceeding. The court orders that the plaintiff pay counsel fees to the defendant in the amount of $4,500.00, within 30 days of the date of this order.
The court further orders that the plaintiff provide a CT Page 7179 sworn financial affidavit to the defendant on June 1St and January 1St of each calendar year while he is required to make child support payments. The court also orders that the plaintiff shall provide to the defendant, on or before May 1st of each calendar year, a complete copy of his State and Federal income tax returns for the prior tax year. These orders are entered in order to ensure that the defendant will be advised of any future substantial changes in the plaintiff's financial circumstances.
SO ORDERED.
BY THE COURT,
Dyer, J.
 EXHIBIT A The Court's Computation on Child Support Arrearages
Time Period Rate Amount Due Minus Payment Total Due
1/1/00 through $365.00 $1,460.00 $533.00 $927.00 1/31/00 (4 Weeks)
2/1/00 through $186.00 $6,510.00 $2,132.00 $4,378.00 8/31/00 (35 Weeks)
9/1/00 through $126.00 $1,638.00 $0.00 $1,638.00 12/31/00 (13 Weeks)
1/1/01 through $126.00 $2,772.00 $0.00 $2,772.00 5/28/01 (22 Weeks)
 TOTAL SUPPORT ARREARAGE $9,715.00 AS OF 5/28/01
CT Page 7180